IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GERALD KEITH UNDERWOOD,

          Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of Social Security,

          Defendant.

OPINION AND ORDER

18-cv-326-slc

Plaintiff Gerald Underwood, who is proceeding *pro se*, is seeking review of a final decision by defendant Nancy Berryhill, Acting Commissioner of Social Security, denying his claim for disability benefits under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge (ALJ) who denied his claim concluded that even though Underwood has several severe impairments, he was not disabled because he could perform sedentary work with some additional limitations. Also before the court is Underwood's motion for assistance in recruiting counsel to file a reply brief and motion for an extension to find an attorney to submit a reply brief. Dkts. 17-18. For the reasons explained below, I am upholding the ALJ's decision and denying Underwood's motions regarding counsel for the submission of a reply brief.

The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case:

**RELEVANT FACTS**

**I. Procedural Background**

This is Underwood's second appeal in this court regarding his claim for benefits. He initially applied for supplemental security income (SSI) and disability insurance benefits (SSDI)

in July 2011, alleging that he has been disabled since December 1, 2008 because of numerous impairments, including chronic vertigo, panic attacks, depression, chronic obstructive pulmonary disease (COPD), arthritis, diabetes, and gastroesophageal reflux disease (GERD). AR 237. His date last insured with respect to SSDI was June 30, 2009, when he was 47 years old. AR 33, 232.

Underwood's SSI application was denied because his assets exceeded the statutory limit, but he did not appeal that decision. AR 819. After the local disability agency denied his SSDI application initially and upon reconsideration, Underwood appealed and had a hearing before ALJ Ken Terry, who denied his claim on June 19, 2013. AR 35, 114-29, 130. Underwood filed suit in this court in May 2015 (case no. 15-cv-305-bbc), and the parties stipulated to a voluntary remand. AR 651-65. The Appeals Council remanded the case to ALJ Joseph Jacobson, who held a hearing in June 2016, at which Underwood appeared with counsel. AR 540. ALJ Jacobson denied Underwood's claim in September 2016. AR 671-82. Underwood appealed and the Appeals Council remanded to a third ALJ. AR 662-64, 829. He appeared with counsel at a hearing before ALJ Brent Bedwell on June 18, 2017. AR 448. On August 14, 2017, ALJ Brentwell denied Underwood's claim, and that decision is the subject of Underwood's current appeal. AR 448-61.

## II. Relevant Treatment and Opinions[1]

### A. Treating Physicians

On September 22, 2006, psychologist Dr. David Black wrote that Underwood suffered from generalized anxiety disorder that affected his concentration and motivation and that his ability to maintain employment depended on how well he managed this disorder. Dr. Black noted that Underwood responded well to therapy. AR 1225. Although Dr. Black last saw Underwood in 2010, AR 560, he issued an opinion on July 2, 2012, in which he stated that Underwood had been seen intermittently at his clinic since 1996 for symptoms of anxiety, depression, and panic attacks, but "it is less likely than not" that Underwood's anxiety, depression, and mood disorder would render him incapable of working, AR 364.

On April 29, 2009, Underwood saw Dr. David Rowe for problems with vertigo, for which he had been seen previously in 2005 and 2006. AR 330, 332-34. Dr. Rowe recommended exercises and he prescribed meclizine as a preventative measure. AR 330. Dr. Rowe also wrote a letter to Underwood's employer, stating that Underwood suffered from peripheral vertigo that was more likely than not benign positional vertigo, and that Underwood may feel unstable from time-to-time, limiting his effectiveness in the workplace. AR 331. Dr. Rowe did not see Underwood again, but on April 2, 2013, Dr. Rowe completed a physical residual functional assessment form for Underwood, in which he checked a box indicating that Underwood had speech discrimination scores of 40% or less in his better ear and another box indicating that

---

[1] Although the ALJ reviewed other medical evidence from the record, he noted that it was irrelevant to Underwood's claim because it discussed his condition either well before or after the relevant six-month period.

Underwood did not have a severe speech or language disorder. Dr. Rowe did not assess any functional limitations for Underwood. AR 409-10.

Underwood saw Dr. Jason Welch on May 21, 2010 to establish primary care. AR 420. In a "medical form" completed on July 8, 2013, Dr. Welch stated the opinion that Underwood may be able to perform part-time sedentary work but his vertigo, deep vein thrombosis, panic attacks, and back and leg pain had prevented him from working full time since 2006. AR 430.

**B. State Agency and Third-Party Opinions**

Following an interview with Underwood on September 13, 2006, Department of Vocational Rehabilitation (DVR) Counselor Susan Munger completed a functional assessment rating in which she noted that Underwood had been diagnosed with generalized anxiety disorder that caused him to be severely limited in self-direction. She specifically noted that Underwood has a great deal of difficulty with decision making, life goals, and concentration and attention to tasks. AR 1034-36.

On January 30, 2012, Randall Ebben, Underwood's friend of 26 years, completed a third-party function report. AR 270. Ebben stated that although Underwood is sometimes limited because of panic attacks and vertigo, he provides care for his wife who has cerebral palsy (including feeding and driving), feeds and cares for his dogs, does all types of household chores, drives, shops, golfs three to five days a week, visits friends, walks up to half a mile before needing to rest five to 10 minutes, and attends music events. AR 271-77.

During the initial and reconsideration levels of review on November 22, 2011 and January 30, 2012, state agency physicians Dr. Sunita Patel and Dr. R. James Mabry noted that

there was insufficient evidence in the record from which they could conclude that Underwood had any severe impairment or disabling symptoms. AR 117, 125-26. In addition, state agency psychologists Dr. Thomas Conger and Dr. Sanford Golin found that there was insufficient evidence from which they could assess Underwood's alleged mental impairments prior to June 30, 2009. AR 118 and 126.

## III. Administrative Decision

In denying Underwood's application on August 14, 2017, the ALJ determined that Underwood was severely impaired by diabetes mellitus, obesity, and vestibular/vertigo disorder during the relevant period of December 1, 2008 to June 30, 2009. AR 451. He found that even though there was evidence that Underwood suffered from other medical conditions (such as GERD, depression, anxiety, arthritis, deep vein thrombosis, leg edema, and cellulitis in his ankle), those conditions either did not rise to the level of a severe impairment during the relevant period or had not yet developed prior to the expiration of Underwood's insured status in 2009. *See* AR 451-55, 457-58 (ALJ's extensive discussion of records related to these other conditions). The ALJ determined that Underwood retained the RFC to perform sedentary work limited to occasional decision making and changes in work setting; no climbing ropes, ladders, and scaffolds; no kneeling or crawling; avoiding exposure to heights, hazards, and moving machinery; and occasional stooping, crouching, and climbing ramps and stairs. AR 456.

In reaching his decision, the ALJ found it significant that there were very few physician opinions identifying any specific job-related limitations for Underwood during the relevant period; at most, Underwood had received intermittent medical attention revealing generally

5

unremarkable findings consistent with short-term conditions. In addition, the ALJ noted that Underwood's use of medications was conservative and on an "as needed" basis. AR 457, 458. The ALJ considered all of the medical and non-medical opinions in the record and found that most did not relate to the relevant period of alleged disability. He placed some weight on the findings of state agency physicians, Dr. Black's 2012 statement, and Dr. Welch's 2013 sedentary work restriction. AR 458-59. He also considered and gave some weight to the third-party statements of Ebbens and Munger. The ALJ noted that Underwood's activities during the relevant six-month period (including those reported by Ebbens) and the overall lack of contemporaneous medical evidence failed to support the degree of debilitation alleged by Underwood. AR 457-58.

Relying on the testimony of the vocational expert Jacquelyn Wenkman, the ALJ found that Underwood could perform work existing in significant numbers in the national economy, including sorter, order clerk, and office helper. AR 461.

## OPINION

**I. Legal Standards**

In reviewing the ALJ's decision, this court's role is to determine whether the decision denying benefits is supported by "substantial evidence." 42 U.S.C. § 405(g); *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). "The administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate

6

determination." *Id.*; *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Although pleadings filed by a plaintiff on his own behalf are held to less exacting standards than those prepared by counsel, a plaintiff seeking to challenge an agency decision must present arguments supported by legal authority and citations to the record, even if he lacks counsel. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("[W]e must be able to discern cogent arguments in any appellate brief, even one from a pro se litigant."); *Cadenhead v. Astrue*, 410 Fed. Appx. 982, 984 (7th Cir. 2011) ("Appellants, including those who are pro se, must present arguments supported by legal authority and citations to the record."); *Cross v. Colvin*, 2016 WL 53819, at *4 (C.D. Ill. Jan. 5, 2016) ("All disability claimants, even those proceeding pro se, bear the burden of demonstrating that the ALJ committed reversible error in rendering [his] decision."). A generalized assertion of error is not enough to challenge an adverse ruling, *Anderson*, 241 F.3d at 545, and undeveloped or unsupported contentions are waived, *Long v. Teachers' Retirement System of State of Illinois*, 585 F.3d 344, 349 (7th Cir. 2009); *Jones v. InfoCure Corp.*, 310 F.3d 529, 534 (7th Cir. 2002).

## II.  Motions Related to Counsel

After Underwood had filed his brief and several documents in support of his appeal and the commissioner filed her response brief, Underwood filed a motion seeking court assistance in recruiting counsel to help him write a reply brief, and he asked for a 30 day extension to try to find an attorney to represent him. A pro se litigant does not have a right to counsel in a civil case,

*Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but a district court has discretion to assist pro se litigants in finding lawyers to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). However, a party who wants assistance from the court in recruiting counsel must meet several requirements. *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010). First, he must show that he is unable to afford to hire his own lawyer. 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). Second, he must show that he made reasonable efforts on his own to find a lawyer to represent him. *Jackson v. County of McLean*, 953 F.2d 1070 (7th Cir. 1992). Finally, he must show that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt*, 503 F.3d at 654-55.

Although the court has found Underwood to be indigent, he has not shown that he made reasonable but unsuccessful efforts to find a lawyer on his own, or that recruiting a volunteer attorney is necessary in this case. Ideally, every deserving litigant would be represented by a lawyer, but the unfortunate reality is that the pro se plaintiffs who file lawsuits in this federal court vastly outnumber the lawyers who are willing, able, and qualified to provide representation.[2] As a result, this court is limited to recruiting counsel only when a plaintiff can demonstrate that his case is one of the few in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. This is not one of those cases. Underwood's appeal is relatively clear, well-organized, and shows his familiarity with the legal concepts that are relevant to his case. Further, social security appeals are not complex, they do

---

[2] About 1000 civil lawsuits are filed in this court every calendar year, and about 300 of them are filed by non-lawyers. Despite constant recruitment efforts by this court, only about 30 lawyers and law firms are willing to volunteer to represent a pro se civil plaintiff, and they don't all take a case every year.

8

not require extensive litigation or filings, and they depend solely on this court's review of the ALJ's written decision and the administrative record, which both are part of the record. In any event, recruitment of counsel would not make a difference in this case because any new arguments that an attorney would have raised on Underwood's behalf for the first time in a reply brief would be considered waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) (noting rule that arguments raised or developed for first time in reply brief are waived is well-established).

### III. Underwood's Challenges

Underwood filed a complaint and a brief in support of his appeal, but the brief he filed is a copy of the one his previous attorney filed in support of the 2015 appeal in this court. *Compare* dkt. 14 in case no. 18-cv-326-slc *with* dkt. 18 in case no. 15-cv-305-bbc. In addition, attached to Underwood's brief are 18 different documents, most of which involve treatment or events that occurred well before or well after the limited six-month period at issue in this case. Dkt. 14, exh. 1-18. Therefore, most of Underwood's submissions are not relevant to his current appeal. However, in an exhibit entitled "Findings for Review of the Decisions," Underwood details what he considers to be errors that the agency, including ALJ Bedwell, made in assessing the medical evidence. Dkt. 14, exh. 1. Because the Commissioner has responded to many of the arguments that Underwood makes in that document, I will consider them, with some exceptions:

First, to the extent that Underwood is challenging the decisions of previous ALJs or the Appeals Council, those arguments are not relevant because the prior decisions are not the subject of this appeal. Second, to the extent that Underwood does not identify clearly any specific error

9

in the most recent ALJ decision and then support his argument with citations to the record or legal authority, I will consider the argument waived for Underwood's failure to develop it adequately. *See McLachlan v. Astrue*, 392 Fed. Appx. 493, 494 (7th Cir. 2010) (dismissing pro se appeal because the brief did "not refer to facts in the record or contain an argument consisting of more than a generalized assertion of error").

After reviewing Underwood's list of concerns, I understand him to be raising the following issues:

- Jacquelyn Wenkman, the vocational expert who testified at the June 2017 hearing, failed to recuse herself even though she would have had access to his records while she was a vocational rehabilitation specialist at the University of Wisconsin-Whitewater, where Underwood worked and his ex-wife attended classes and received services.

- Contrary to the ALJ's finding, a March 2009 record supports Underwood's testimony that he was treated with a "wound gel" for a diabetic ulcer.

- Underwood has severe arthritis in several joints that lasted for a long period of time.

- The ALJ did not consider Dr. Welch's 2013 finding that Underwood was capable of only part-time work.

- Randy Ebben's third-party statements that Underwood plays golf and was the primary caretaker for his wife from 2008 to 2009 are not accurate and should not have been relied on by the ALJ.

- Underwood's financial and mental health problems prevented him from getting regular medical or mental health treatment in 2008 and 2009, but he nonetheless saw Dr. Black for psychological services a few times during this period.

- The ALJ did not call an expert to testify about Underwood's alleged mental impairments, as the Appeals Council suggested he do, and refused to grant Underwood's request that Dr. Black and DVR counselor Susan Munger testify at the hearing.

I will discuss each of these challenges separately.

### A. Vocational Expert

Underwood contends that vocational expert Wenkman should have recused herself because she was a vocational rehabilitation specialist at the University of Wisconsin Whitewater's Center for Students with Disabilities while Underwood and his ex-wife attended the university and received services through the disability center. Underwood cannot challenge Wenkman's testimony on this ground because neither he nor his attorney raised this issue when the ALJ asked them at the hearing whether they had any objection to Wenkman's qualifications or testimony. AR 475-510. The failure to raise an argument during the administrative proceedings means that the issue is waived on appeal. *See Brewer v. Chater*, 103 F.3d 1384, 1393 (7th Cir. 1997) (failure to raise assertion administratively constitutes waiver); *Pope v. Shalala*, 998 F.2d 473, 480 n.6 (7th Cir. 1993) ("Since the challenge was not raised administratively, we will not review the issue here.").

In any event, even if Underwood had not waived this argument, he has not presented any evidence in support of his allegation that Wenkman knew him or his wife, or previously had reviewed any specific records relating to their disabilities, or had any reason to give false or biased testimony. Additionally, the ALJ's hypothetical question to Wenkman accounted for all of Underwood's limitations supported by the record, and Wenkman identified examples of jobs that could be performed by someone with Underwood's vocational background. AR 503-08. The ALJ was entitled to rely on Wenkman's expert testimony. *Liskowitz v. Astrue*, 559 F.3d 736, 745-46 (7th Cir. 2009) ("Where, as here, the VE identifies a significant number of jobs the claimant is capable of performing and this testimony is uncontradicted (and is otherwise proper), it is not

11

error for the ALJ to rely on the VE's testimony."). Without more, Underwood's suggestion of bias is mere speculation and not grounds for overturning the ALJ's decision.

**B. Diabetic Ulcer**

Underwood argues that "[a]ll judges used the same incorrect illustrations in denial of Mr. Underwood's testimony of Wound Gel for Diabetic. Ulcer." Dkt. 14-1 at 2-3. Underwood's argument is not entirely clear but other statements he makes suggest that he is saying that the ALJ ignored evidence related to his cellulitis and diabetes. For example, Underwood points out that he was initially diagnosed with cellulitis on March 4, 2009, for which he was prescribed antibiotics and neosporin, but was later told on March 30, 2009 that he had a venous stasis ulcer that was related to his diabetes and was told to use bacitracin instead of neosporin. *See* dkt. 14-1 at 3 and 5 (citing AR 1418-20).

However, the ALJ discussed both Underwood's cellulitis and stasis ulcer in his opinion and found that nothing in the record indicated that these conditions resulted in long-term or permanent limitations. The ALJ specifically referred to the medical records cited by Underwood, acknowledging that Underwood had developed cellulitis on his left ankle and bilateral leg edema around March 4, 2009 and was told on April 14, 2009 to elevate his legs and try walking daily. AR 452. The ALJ correctly noted that the record does not show that these instructions were meant to be long-term or permanent limitations. In fact, the April 2009 progress note shows that the physician expected the condition to heal within a few weeks. AR 1418.

Although the ALJ did not discuss mention the stasis ulcer or wound gel in particular, he was not required to do so. "The ALJ's failure to address [certain] specific findings . . . does not

12

render [her] decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in [her] decision." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002).

## C. Arthritis

Underwood briefly states that he takes issue with "the longevity and severity of his left ankle condition regarding arthritis" and points out that he had arthritis in other joints as well. Dkt. 14-1 at 3. X-rays taken in 2015 confirm that Underwood has degenerative abnormalities and severe osteoarthritis in more than one joint. AR 1891-92. The ALJ considered this evidence and noted that there was relevant medical evidence documenting Underwood's reports of ankle and back pain in 1977, 1988, and 1990—well before his alleged onset date. AR 451 (citing AR 1887-92, 2117- 24) and 453. However, the ALJ correctly found that there was "little other documentation of arthritic or ankle problems until those reported" during a consultative examination with Dr. Ward Jankus in August 2015, well after the date last insured. *Id.* The ALJ also pointed out that during the insured period, Underwood saw Dr. Jane Walloch in July 2008 to establish care and had a follow-up visit in September 2008, but she did not note any abnormal observations after examining Underwood. AR 452 (citing AR 2146-50, 2161-66). Underwood also did not report any arthritis-related complaints during those visits.

After reviewing the evidence related to Underwood's complaints of arthritis, the ALJ stated that even though the first ALJ to review Underwood's claim found that Underwood had a history of arthritis, he agreed with the second ALJ, who determined that there was very little evidence of arthritis in the record to support a finding of a severe impairment prior to June 30, 2009. AR 453. The record supports the ALJ's conclusion. Underwood has not pointed to any evidence

13

concerning his arthritis that the ALJ failed to consider or that contradicts the ALJ's findings for the relevant period in question, and I have found none. Therefore, I will affirm the ALJ's finding with respect to this issue.

### D. Dr. Welch's Opinion

Contrary to Underwood's assertion, the ALJ specifically addressed Dr. Welch's July 2013 opinion that Underwood's "onset date" was 2006 and that Underwood "might be able to do part time but not full time sedentary work." AR 459 (citing AR 430). The ALJ reasonably gave this opinion only some weight in light of the fact that Dr. Welch had not seen Underwood since 2009 and "did not clearly indicate that any proposed limitations dated back to [2008 or 2009]." AR 459. As the Commissioner points out, a claimant cannot base a claim for disability benefits on evidence that post-dates the expiration of the insured period. *See* 20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2) (claimants are only entitled to DIB if disabled prior to expiration of insured status); *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) ("[W]hatever condition the claimant may be in at his hearing, the claimant must establish that he was disabled before the expiration of his insured status . . . to be eligible for disability insurance benefits."). Therefore, the ALJ did not err in rejecting Dr. Welch's 2013 opinion.

### E. Ebben's Statement

The ALJ gave some weight to the 2012 third-party statement of Ebben, who stated that Underwood cared for his wife and dogs and was able to cook, perform all household tasks, drive, shop, socialize, and golf several times a week. Underwood argues that Ebben's statement is at

14

odds with the medical record and inaccurately describes his activity level, which is more limited than Ebben knew about. In particular, Underwood says that he was not the sole caregiver for his wife, he used a cart when golfing, and he did not golf as often as Ebben claimed.

Contrary to Underwood's contention, the ALJ acknowledged that Underwood used a cart when golfing but reasonably found that "the demands/motions involved with golfing would appear to be inconsistent with the effects of recurrent vertigo." AR 457. In any event, even if Underwood is correct about Ebben misstating the level of his abilities, these discrepancies do not require a remand.

The ALJ did not base his denial of Underwood's claim solely on the fact that he was able to golf or perform other activities. He clarified that Underwood's activities, even if limited, merely constituted relevant evidence undermining his claims of debilitating symptoms. More importantly, as noted above, the ALJ reasonably concluded that there was insufficient evidence in the record from which he could conclude that Underwood had disabling symptoms between December 2008 and June 2009. Accordingly, the ALJ's consideration of Ebben's statement does not qualify as reversible error.

### G. Inability to Obtain Regular Treatment

Underwood generally asserts that he did not seek consistent treatment for his mental or other impairments because he had financial and mental health problems. Social Security Rulings (SSRs) 16-3p (effective Mar. 28, 2016) and 96-7p (effective Jul. 2, 1996 to Mar. 28, 2016) do instruct an ALJ to request and consider an explanation when a claimant does not seek medical treatment in a consistent manner, but the rulings only require the ALJ to obtain the explanation

if he draws negative "inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment." *Id.*, 1996 WL 374186, at *7. Here, the ALJ noted that Underwood received only limited or intermittent treatment for some conditions, but he did not question Underwood's desire or need to seek treatment and he did not discount Underwood's subjective symptoms based solely on the fact that Underwood failed to seek regular medical treatment. Rather, the ALJ concluded that "the treatment notes for the period in question simply do not contain contemporaneous documentation to support the degree of debilitation alleged." AR 457. Therefore, any error the ALJ may have made in not asking Underwood to explain his lack of treatment is harmless. *See Kittelson v. Astrue*, 362 Fed. Appx. 553, 558 (7th Cir. 2010) (ALJ erred by not considering lack of insurance, "but this error was harmless because he also based his assessment on the absence of evidence of serious functional limitations due to depression or episodes of decompensation.").

In addition, as the Commissioner points out, Underwood's own testimony undermines his allegations that he failed to seek treatment because of financial hardship. Underwood testified at his 2013 administrative hearing that he was living with his wife between 2007 and 2012 and that she had a multi-million dollar settlement to live off from. AR 67-68, 76, 102. Although Underwood worked as a caretaker for his ex-wife in 2007 and 2008, she stopped paying him in 2009. *Id.* However, Underwood had insurance through the state during the relevant 2008/2009 period. AR 87. Underwood also fails to cite any medical or other source suggesting that the reason he did not seek additional treatment was due to mental health symptoms.

### F. Mental Health Experts

Contrary to Underwood's contention, neither this court nor the Appeals Council ordered the ALJ to call a psychological expert. Both remand orders instructed the ALJ to consult a psychological expert "if necessary" to make a determination concerning Underwood's disability. AR 656, 663. Underwood has failed to explain why a consultative exam—which would come nearly a decade after the relevant period—or testimony from a medical expert was necessary. The ALJ considered the existing record and concluded that it contained sufficient information to make a decision. Specifically, he found that the record did not show that Underwood was suffering from disabling psychological symptoms. In support, the ALJ cited Dr. Black's September 2006 statement that Underwood's ability to maintain employment depended on how well he was doing, and Dr. Black's June 2012 statement that Underwood's mental health status would not preclude employment. AR 453-54, 458 (citing AR 364). Without any evidence establishing that Underwood was not managing his mental health in 2008 and 2009, the ALJ's conclusion is not unreasonable.

Underwood has submitted receipts allegedly showing that he visited Dr. Black in 2008 and 2009, but even if these documents prove that Dr. Black saw Underwood during that time, they do not address the ALJ's fundamental concern that there is no medical documentation detailing the severity of Underwood's symptoms during the relevant period. Underwood also argues that Munger's 2006 DVR assessment that he has severe limitations in self-direction supports Dr. Black's opinion. The ALJ reasonably concluded that this general assessment by a non-medical source, which pre-dates the relevant period by two years, only deserved some weight. In any event, the ALJ stated that he gave Underwood the benefit of the doubt and accounted for his

17

allegations of depression, anxiety, and panic attacks by limiting Underwood to unskilled work with only occasional decisionmaking and changes in the work setting. AR 459.

Finally, Underwood faults the ALJ for failing to grant his request to subpoena Dr. Black and Ms. Munger to testify at his administrative hearing. However, the ALJ was not required to do so. A claimant does not have an "absolute right to subpoena [his] doctor." *Burton v. Barnhart*, 43 Fed. Appx. 991, 995 (7th Cir. 2002). Federal regulations provide that "[w]hen it is *reasonably necessary for the full presentation of a case*, an administrative law judge . . . *may*, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses." 20 C.F.R. § 404.950(d) (emphasis added). Here, the ALJ had Dr. Black's and Ms. Munger's written reports, and there is no indication that either provider had any more information to add or that subpoenaing them would have otherwise changed the outcome of Underwood's case. Neither provider had seen Underwood in several years. Accordingly, Underwood has not shown that the ALJ committed reversible error in failing to call a psychological expert or Dr. Black or Ms. Munger to testify at the hearing.

## IV. Conclusion

In sum, the medical evidence of record does not support Underwood's subjective complaints of disabling symptoms and does not dictate a finding that he is subject to any more work-related limitations than those set forth in the RFC assessment. Accordingly, I find that the ALJ did not commit reversible error in concluding that Underwood was capable of limited sedentary work and am affirming his decision.

**ORDER**

IT IS ORDERED that the decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, denying plaintiff Gerald Underwood's application for disability benefits is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 20th day of March, 2019.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge